#30433-a-PJD
**2024 S.D. 49**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

ACUITY, a Mutual Insurance
Company,                                        Plaintiff and Appellant,

    v.

TERRA-TEK, LLC and JON WABA,           Defendants and Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
BRULE COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE BRUCE V. ANDERSON
Judge

* * * *

MARK J. ARNDT
DELIA M. DRULEY of
Evans, Haigh & Arndt, LLP
Sioux Falls, South Dakota            Attorneys for plaintiff and
                                     appellant.


GREGORY G. STROMMEN of
DeMersseman Jensen Tellinghuisen
   & Huffman, LLP
Rapid City, South Dakota             Attorneys for defendants and
                                     appellees.

* * * *

CONSIDERED ON BRIEFS
APRIL 23, 2024
OPINION FILED **08/21/24**

#30433

DEVANEY, Justice

[¶1.] Acuity issued Terra-Tek, LLC a commercial auto policy, and Terra-Tek paid a premium to list owners and employees John Waba and Sheila Foreman as additional named insureds. After Waba sustained bodily injuries in an auto accident with an underinsured motorist on December 30, 2019, he filed a claim for underinsured motorist (UIM) benefits with Acuity. Acuity denied the claim because Waba was not occupying a vehicle covered under Terra-Tek's policy at the time of the accident. Acuity also commenced a declaratory judgment action, seeking a ruling that Waba is not entitled to UIM benefits. The parties filed cross-motions for summary judgment, and after a hearing, the circuit court determined that Terra-Tek's UIM endorsement unambiguously provides Waba UIM coverage for the bodily injuries he sustained from the December 2019 accident. Acuity appeals. We affirm.

**Factual and Procedural Background**

[¶2.] On December 30, 2019, Waba was driving a 1993 GMC Jimmy owned by Foreman when another vehicle drove into Waba's lane of travel and crashed into him. Waba sustained injuries from the accident, and the other driver's insurance company accepted liability and tendered the driver's policy limits, $250,000, to Waba for the damages he sustained. Waba thereafter filed a claim for UIM benefits with Acuity under the commercial auto policy issued to Terra-Tek. Terra-Tek is the "FIRST NAMED INSURED," and Waba and Foreman are "ADDITIONAL NAMED INSUREDS." According to Waba, Terra-Tek paid an additional premium to have him and Foreman included as named insureds.

-1-

[¶3.]      Acuity denied Waba's claim, informing him that because the 1993 GMC was not a "covered *auto*" under Terra-Tek's policy, he was not entitled to UIM benefits for injuries he sustained from the December 2019 accident. Acuity thereafter commenced a declaratory judgment action against Terra-Tek and Waba, seeking a ruling that Waba is not entitled to recover UIM benefits under Terra-Tek's policy. The parties filed cross-motions for summary judgment. Acuity argued that because the introductory language "For a covered *auto*" in Terra-Tek's UIM endorsement precedes the coverage provisions under this endorsement, UIM coverage exists only for bodily injuries a named insured sustains while occupying a covered auto. In response, Waba argued that under the circumstances of this case, UIM coverage exists because the endorsement covers bodily injuries an insured sustains in an accident with a driver of an underinsured vehicle and the definition of a named insured does not require the insured to be occupying a covered auto.

[¶4.]      As it relates to Terra-Tek's insurance contract with Acuity, the record contains the following documents: the BUSINESS AUTO COVERAGE FORM (the Policy), the Business Auto Amended Declarations (Declarations page), and the South Dakota Uninsured and Underinsured Motorists Coverage (the Endorsement). The relevant language of each is detailed below.

[¶5.]      Under the Policy, an "*Insured*" is defined as "any person or organization qualifying as an *insured* in the Who Is an Insured provision of the applicable coverage." The Policy also provides, under the section on COVERED AUTOS, that:

> Item Two of the Declarations shows the *autos* that are covered *autos* for each of your coverages. The following numerical

symbols describe the *autos* that may be covered *autos*. The symbols entered next to a coverage on the Declarations designate the only *autos* that are covered *autos*.

The "1" symbol means any auto, and the "7" symbol means "[o]nly those *autos* described in Item Three of the Declarations for which a premium charge is shown[.]"

[¶6.]     The Declarations page provides under SCHEDULE OF COVERAGES AND COVERED AUTOS that "[e]ach of these coverages apply only to those *autos* shown as covered *autos* by the entry of one or more of the symbols from the Covered Autos section of the Business Auto Coverage Form next to the name of the coverage." In the table detailing coverages, "Underinsured Motorists" has a "7" symbol under the column for "Covered Auto Symbols," and a $1,000,000 limit of insurance for each person and $1,000,000 for each accident. There is also a list of twelve COVERAGE FORMS AND ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART, including the Policy and the Endorsement at issue here.

[¶7.]     Also within the Declarations page, the SCHEDULE OF COVERAGES AND PREMIUM DETAIL lists specific automobiles and trailers and the coverages applicable to them. The 1993 GMC driven by Waba on the date of the accident is not included on this list. Finally, the Declarations page lists Terra-Tek as the first named insured and Waba and Foreman as additional named insureds.

[¶8.]     The Endorsement for uninsured and underinsured motorist coverage provides:

> This endorsement modifies insurance provided under the following:
> BUSINESS AUTO COVERAGE FORM
> GARAGE COVERAGE FORM
> MOTOR CARRIER COVERAGE FORM
> . . .

For a covered *auto* licensed or principally garaged in, or *garage operations* conducted in, South Dakota:

## 1. COVERAGE

. . .

### c. Underinsured Motorists Coverage

We will pay all sums the *insured* is legally entitled to recover as compensatory damages from the owner or driver of an *underinsured motor vehicle*. The damages must result from *bodily injury* sustained by the *insured* caused by an *accident*. The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the *underinsured motor vehicle*.

. . .

## 2. WHO IS AN INSURED

If the Named Insured is designated In the Declarations as:

**a.** An individual, then the following are *insureds*:

(1) The Named Insured and any *family members*.

(2) Anyone else *occupying* a covered *auto* or a temporary substitute for a covered *auto*. The covered *auto* must be out of service because of its breakdown, repair, servicing, loss or destruction.

(3) Anyone for damages he or she is entitled to recover because of *bodily injury* sustained by another *insured*.

**b.** A partnership, limited liability company, corporation, or any other form of organization, then the following are *insureds*:

(1) Anyone *occupying* a covered *auto* or a temporary substitute for a covered *auto*. The covered *auto* must be out of service because of its breakdown repair, servicing, *loss* or destruction.

(2) Anyone for damages he or she is entitled to recover because of *bodily injury* sustained by another *insured*.

[¶9.]     The circuit court held a hearing on the parties' cross-motions for summary judgment, and after considering their arguments and written submissions, the court issued a memorandum decision.  The court noted that the case implicates a matter that this Court has not before examined and that a review of decisions from other courts reflects a split of authority.  Some courts have concluded that the "For a covered auto" language in the UIM endorsement does not control who is deemed an insured; instead, the language in the "Who Is an Insured" section controls the applicable UIM coverage.  These courts have held that because the "Who Is an Insured" section in the endorsement does not condition UIM coverage for a named insured on occupying a covered auto, the named insured is entitled to UIM coverage under the endorsement.  *See, e.g.*, *Grinnell Mut. Reinsurance Co. v. Haight*, 697 F.3d 582 (7th Cir. 2012).  Other courts have held that the "For a covered *auto*" language in a UIM endorsement limits UIM coverage to insureds occupying covered autos listed in the declarations page for the commercial auto policy.  *See, e.g.*, *Lisowski v. Hastings Mut. Ins. Co.*, 759 N.W.2d 754 (Wis. 2009).

[¶10.]     As it pertains to Terra-Tek's insurance contract with Acuity, the circuit court noted that the Declarations page lists Waba as a named insured and that it was "unrefuted" that Terra-Tek paid an additional premium to have Waba included as a named insured.  The court also noted that the Endorsement lists several types of insureds and distinguishes between individual and business entities, and as it pertains to a named insured, like Waba, there is no requirement that the insured be occupying a covered auto.  Thus, the court concluded "that the language clearly

indicates that Mr. Waba is insured under the UIM Endorsement for the injuries he sustained in an accident despite the fact that those injuries occurred while driving the GMC Jimmy owned by Shelia Foreman."

[¶11.] Further, although the Declarations page uses a "7" to designate covered autos, the court determined that "the UIM Endorsement clearly amends those provisions." In the court's view, to conclude otherwise and read the "For a covered *auto*" as Acuity contends would render "superfluous" the language defining non-named insureds as "[a]nyone else *occupying* a covered *auto*." The court noted that if Acuity intended to limit UIM coverage to named insureds occupying a covered auto, "all that would be required is a definition including 'anyone in a covered auto.'" Alternatively, the court held "that the terms of the contract under these circumstances are ambiguous[,]" which requires an interpretation of the insurance contract in favor of UIM coverage.

[¶12.] The circuit court issued a judgment denying Acuity's motion for summary judgment and granting Waba's. The court also declared that Terra-Tek's commercial auto policy with Acuity "provide[s] coverage for Defendant Waba for the automobile collision on December 30, 2019." Acuity appeals, asserting the circuit court erred in its interpretation of Terra-Tek's insurance contract.

**Standard of Review**

[¶13.] As the Court recently stated,

> This Court's standard of review on summary judgment is well-settled. "We affirm the circuit court 'when there are no genuine issues of material fact and the legal questions have been correctly decided.'" *Culhane v. W. Nat'l Mut. Ins. Co.*, 2005 S.D. 97, ¶ 5, 704 N.W.2d 287, 289 (quoting *Sanford v. Sanford*, 2005 S.D. 34, ¶ 11, 694 N.W.2d 283, 287). The interpretation of an

insurance contract is a question of law reviewed de novo with no deference to the circuit court. *N. Star Mut. Ins. v. Korzan*, 2015 S.D. 97, ¶ 13, 873 N.W.2d 57, 61 (citing *Ass Kickin Ranch, LLC v. N. Star Mut. Ins. Co.*, 2012 S.D. 73, ¶ 7, 822 N.W.2d 724, 726).

*State Farm Mut. Auto. Ins. Co. v. Grunewaldt*, 2023 S.D. 61, ¶ 7, 998 N.W.2d 361, 364.

### Analysis and Decision

[¶14.]     Acuity argues the Declarations page clearly provides that Terra-Tek's UIM coverage is limited to an insured occupying a covered auto and that nothing in the Endorsement modifies this coverage requirement. Acuity relies on the "initial prefatory language" in the Endorsement stating that it applies "For a covered *auto* licensed . . . in South Dakota[.]" Acuity also notes that Terra-Tek could have listed the 1993 GMC as a covered auto and paid a premium for UIM coverage, but it did not do so. Thus, Acuity contends the court erred in its determination that Waba is entitled to UIM coverage for injuries he sustained while occupying a vehicle that was not a covered auto under Terra-Tek's policy.

[¶15.]     We construe insurance contract language "according to its plain and ordinary meaning[,]" and we "cannot make a forced construction or a new contract for the parties." *W. Agric. Ins. Co. v. Arbab-Azzein*, 2020 S.D. 12, ¶ 11, 940 N.W.2d 865, 868 (quoting *Ass Kickin Ranch*, 2012 S.D. 73, ¶ 10, 822 N.W.2d at 727). "Essentially, this means that when the terms of an insurance policy are unambiguous, these terms 'cannot be enlarged or diminished by judicial construction.'" *Ass Kickin Ranch*, 2012 S.D. 73, ¶ 10, 822 N.W.2d at 727 (citation omitted). Further, "[c]ontract interpretation requires examination of the entire contract." *Larimer v. Am. Fam. Mut. Ins. Co.*, 2019 S.D. 21, ¶ 8, 926 N.W.2d 472,

475. As SDCL 58-11-39 provides, "Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any rider, endorsement, or application lawfully made a part of the policy."

[¶16.]     In support of its argument that the Declarations page controls over the Endorsement here, Acuity directs this Court to the following language from *Peterson v. The Travelers Indemnity Co.*:

> Insurance companies routinely use covered auto symbols on the declarations page to delineate coverage. *See, e.g., Haberman v. The Hartford Insurance Group*, 443 F.3d 1257, 1267–68 (10th Cir. 2006) (interpreting an insurance policy that uses a "Covered Auto Symbol" to indicate coverage). Attached endorsements must be read together with [the] rest of the policy. *Mid-Century Ins. Co. v. Lyon*, 562 N.W.2d 888, 890 (S.D. 1997). "When the *declarations page clearly communicates the coverage* provided by the insurance contract, and the other policy provisions *neither expressly change the coverage* nor reflect a different intention than that clearly expressed on the declarations page, *the declarations page controls.*" *Munroe v. Cont'l W. Ins. Co.*, 735 F.3d 783, 787 (8th Cir. 2013) (quoting *Jackson v. Gen. Accident Ins. Co.*, 720 S.W.2d 428, 429 (Mo. App. 1986) (internal quotation marks omitted)).

867 F.3d 992, 996 (8th Cir. 2017) (emphasis added). In *Peterson*, the declarations page listed optional coverages under the policy, including medical pay coverage, and because there was no covered auto symbol next to medical pay coverage, the court concluded that there was no medical pay coverage for the medical payments at issue. *Id.* (noting that the declarations page provides that "[i]nsurance only applies to a coverage for which a Covered Auto Symbol is shown").

[¶17.]     Here, in contrast, Terra-Tek's Declarations page specifically denotes that Terra-Tek obtained UIM coverage.[1]  Also, although the Declarations page states that the coverages listed apply only to those autos shown as covered autos, that language does not clearly communicate the full scope of UIM coverage available to Terra-Tek under the Policy.  Thus, unlike in *Peterson*, it cannot be said that the Declarations page here controls all aspects of Terra-Tek's UIM coverage.

[¶18.]     In regard to Terra-Tek's UIM coverage, under the COVERAGE section in the Endorsement defining the scope of both uninsured and underinsured motorists coverage, there are three subsections—one for uninsured *motorists* coverage, another for uninsured motorists *property damage* coverage, and the third for underinsured *motorists* coverage.  In both the uninsured and underinsured *motorists* coverage provisions, which provide coverage for *bodily injury* sustained by an insured, there is no language requiring that the insured be occupying a covered auto.  However, as it relates to uninsured motorists *property damage* coverage, the Endorsement specifically states that coverage exists only for property damage an insured sustains to an *auto* listed in the schedule of covered autos attached to the Declarations page showing uninsured motorists property damage coverage.  Although Acuity views the phrase "For a covered *auto*" in the introductory language in the Endorsement as a limitation on everything stated thereafter, including in the

---

1.     Terra-Tek's Declarations page is structured differently than the one at issue in *Peterson v. The Travelers Indemnity Co.*, 867 F.3d 992 (8th Cir. 2017).  It does not contain language identifying the *optional* coverages under the policy.  Rather, it identifies the types of coverages actually *obtained* by Terra-Tek.

provisions under the Coverage and Who is an Insured sections, such a reading produces awkward syntax and sentences that make little sense.

[¶19.] For example, under the Coverage section, it does not make sense to state, in regard to underinsured motorists coverage, that: "For a covered *auto* . . . We will pay all sums the *insured* is legally entitled to recover as compensatory damages . . . result[ing] from *bodily injury* sustained by the *insured*[.]" The covered auto does not, of course, sustain the bodily injuries referenced in the insuring clause—the insured individual does. Distilled to its essence, then, the sentence is confounding because it seems to say that Acuity will pay bodily injury damages "For a covered *auto*." Interpreting the policy language in this way would also conflict with SDCL 58-11-9.5, which states that a UIM carrier "agrees to pay its own insured for uncompensated damages as its insured may recover *on account of bodily injury or death*[.]" (Emphasis added.); *see also De Smet Ins. Co. of S. Dakota v. Pourier*, 2011 S.D. 47, ¶ 6, 802 N.W.2d 447, 449 ("[U]nderinsured motorist coverage is generally portable: it follows the insured rather than the vehicle.").

[¶20.] Grafting the "For a covered *auto*" phrase to the Who Is an Insured section is perhaps even more problematic. The Endorsement expressly lists multiple classes of insureds, including named insureds and family members of named insureds without qualification. Notably, the Endorsement also creates an additional class of insureds who are defined as "Anyone else *occupying* a covered *auto*[.]" Aside from the fact that it would be redundant to apply the phrase "For a covered *auto*" to this latter class of insureds, if this prefatory phrase applies to all identified insureds, it effectively dissolves the other classes of insureds by

delineating the universe of insureds as those occupying a covered auto. Interpreting the policy in this way would be confusing and inconsistent with the rule that "[a]n interpretation which gives a reasonable and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable or of no effect." *Nelson v. Schellpfeffer*, 2003 S.D. 7, ¶ 14, 656 N.W.2d 740, 744 (citation omitted).

[¶21.] However, this does not mean the phrase "For a covered *auto*" has no meaning. Rather, the phrase makes sense when it is read in conjunction with the provision on coverage for UIM property damage: "For a covered *auto* . . . We will pay all sums in excess of any deductible shown in the Declarations that the *insured* is legally entitled to recover" for "damages . . . result[ing] from *property damage* to an *auto* specifically described in Item Three of the Declarations for which a limit is shown for Uninsured Motorists Property Damage Coverage."

[¶22.] Moreover, had Acuity intended UIM coverage to apply only to scenarios involving covered autos, it could have included limiting language similar to that contained in the Policy language on LIABILITY COVERAGE. The Who Is an Insured section for LIABILITY COVERAGE defines an insured as:

> **a.** You for any covered *auto*.
> **b.** Anyone else while using with your permission a covered *auto* you own, hire or borrow [with exceptions].
> **c.** Anyone liable for the conduct of an *insured* described above but only to the extent of that liability.

Importantly, the Policy's general definition of an *Insured* is not tethered to the individual occupying a covered auto. Rather, whether an individual is an insured depends on how the "Who Is an Insured provision of the applicable coverage"

defines an insured for that particular coverage. As such, the lack of limiting language in the first category identified under the Who Is an Insured provision in the UIM Endorsement indicates an intent that a named insured need not be occupying a covered auto to receive UIM benefits.

[¶23.]     Acuity, however, directs this Court to the Wisconsin Supreme Court's decision in *Lisowski*, wherein the court interpreted the phrase "For a covered 'auto'" to modify the coverage provisions in the UIM endorsement at issue such that UIM coverage was not implicated unless a named insured was occupying a covered auto at the time of the accident. 759 N.W.2d at 759. In particular, Acuity notes that the Wisconsin court found the phrase "For a covered 'auto,'" rather than the definition of who is an insured, to be the "key" language on the coverage question. *Id.* at 762.

[¶24.]     In response, Waba contends that *Lisowski* reflects the minority view and that this Court should follow the majority view expressed by the Seventh Circuit Court of Appeals in *Grinnell*, 697 F.3d 582.[2] Waba also asserts that *Grinnell* is more persuasive because it applies rules of insurance contract interpretation similar to what this Court employs, such as construing the terms according to their plain and ordinary meaning and ascertaining and giving effect to the parties' intentions as expressed in the words of the policy. *See Heitmann v. Am. Fam. Mut. Ins. Co.*, 2016 S.D. 51, ¶ 12, 883 N.W.2d 506, 509.

[¶25.]     In *Grinnell*, the insurance company, like Acuity here, argued that coverage did not exist because the "For a covered *auto*" phrase means an insured

---

2.     The circuit court similarly expressed an opinion based on its extensive review of the case law on this issue that "the *Grinnell* line of cases appears to be the majority opinion."

must be occupying a covered auto even though the definition of an insured did not include such language. The Seventh Circuit disagreed, concluding that Grinnell's reading of the endorsement "is strained both as a matter of grammar and of logic" and would render the distinctions between types of insureds meaningless. 697 F.3d at 588–89. The court also considered that the definition of who is an insured for liability coverage in the policy included language that the insured must be occupying a covered auto, thus buttressing the court's view that an insured family member need not be occupying a covered auto for UIM motorist coverage. *Id.* at 589. Finally, although the declarations page in *Grinnell* signified the coverages applicable to the covered autos, the court determined that its reading of the UIM endorsement did not render the designations of applicable coverages for covered autos irrelevant. Rather, in the court's view, "[w]hich autos are covered can be relevant in determining UIM coverage, including when . . . the identity of covered autos is necessary and relevant"; however, "when there is no reference to a 'covered auto,' such as [with a named insured and family members], reference to the list of covered autos is not necessary." *Id.*

[¶26.]     Although *Lisowski* and *Grinnell* examined similar policy language, the analysis in *Grinnell* is more persuasive. In particular, *Grinnell* more thoroughly examined the import of the phrase "For a covered auto" in light of other provisions in the policy. *Lisowski*, in contrast, did not refer to other policy language that might bear on the proper interpretation of the UIM endorsement. Importantly, here, according to the Policy's general definitions, whether a person qualifies as an *Insured* is governed by the Who is an Insured provision of each applicable coverage.

Also, unlike the analysis in *Grinnell*, the *Lisowski* Court did not address the syntax issues resulting from its interpretation; rather, the Court simply declared that the difference in language for anyone else occupying a covered auto cannot be read to create UIM coverage for an insured family member.

[¶27.]     We conclude, as the Court did in *Grinnell*, that based on the plain language of the Policy, Declarations page, and Endorsement, UIM coverage applies to a named insured for bodily injuries sustained in an accident with an underinsured driver without a requirement that the insured be occupying a covered auto at the time of the accident. To conclude otherwise would require this Court to, contrary to our rules of interpretation, "make a forced construction or a new contract for the parties." *See Arbab-Azzein*, 2020 S.D. 12, ¶ 11, 940 N.W.2d at 868 (citation omitted). As such, we affirm the circuit court's judgment in favor of Terra-Tek and Waba.

[¶28.]     Affirmed.

[¶29.]     JENSEN, Chief Justice, and KERN, SALTER, and MYREN, Justices, concur.